STATE OF MONTANA EX REL., ALEX. J. JOHNSTON, RELATOR, *v.* DISTRICT COURT, RESPONDENT.

[Submitted May 4, 1898. Decided May 23, 1898.]

*Receiver—Appointment of—Collateral Attack—Contempt.*

1. RECEIVER—*Appointment of—Collateral Attack.*—An order appointing a receiver may be attacked collaterally, where it appears upon the face of the proceeding that the court did not have jurisdiction to grant the order.
2. SAME—*Contempt.*—Where a court has made an order appointing a receiver, without jurisdiction so to do, a stranger to the proceeding cannot be punished for a contempt of court, for interfering with such order.

PETITION by Alex. J. Johnston for *certiorari* to the District Court of the Second Judicial District.    Writ issued.

Statement of the case by the justice delivering the opinion.

The relator sets forth substantially the following facts in his petition for a writ:    An action was commenced in the district court of Silver Bow county by J. D. Thomas and George P. Bretherton against the Thornton-Thomas Mercantile Company, a corporation, asking for the appointment of a receiver to take charge of all the property of said corporation, collect its rents, etc., and to sell the property of the corporation, and to practically wind up its business.    The district court appointed one E. H. Hubbard as receiver, and such receiver duly entered upon his duties, and took charge of the effects of the corporation.    Thereafter the court directed the receiver to sell and dispose of the stock of merchandise which then belonged to the corporation, and in pursuance of such order the receiver sold the stock to the firm of Lutey Bros., who paid to the receiver therefor the sum of $3,241.19.    The receiver deposited said sum of money to his credit as receiver in the bank of W. A. Clark & Bro., at Butte.    Thereafter the said Thornton-Thomas Mercantile Company applied to the supreme court of the state for a writ of *certiorari* to annul the action of the district court in the appointment of a receiver of said cor-

poration, upon the ground that such appointment was unauthorized and void, for the reason that the court had no jurisdiction to make the same. This court decided that the action of the district court was null and void, that there was nothing before the court to authorize the appointment of a receiver, and that the order appointing a receiver and all orders of the court made subsequent thereto should be vacated. (*State* v. *Clancy*, 20 Mont. 284, 50 Pac. 852.)

After the decision of this court the creditors of the corporation attached the stock of merchandise that had been purchased by Lutey Bros. for debts due by the Thornton-Thomas Mercantile Company. The sheriff took possession of the property from Lutey Bros. by virtue of the writs of attachment, and afterwards sold the same to satisfy the judgments against the corporation. Lutey Bros. then petitioned the district court of Silver Bow county for an order directing the receiver of the corporation to repay to them the sum of $3,241.19, said sum being the amount they had paid to the receiver for the stock of merchandise. The receiver moved to dismiss the petition of Lutey Bros., but the court overruled this motion. Thereupon the receiver and Lutey Bros. agreed that the sum of $2,825.39 was the amount remaining due from the receiver to Lutey Bros., and the court then directed the receiver to pay this latter amount to Lutey Bros. out of any moneys in his hands which he had received from Lutey Bros. for the stock of merchandise. The receiver then presented to the bank of W. A. Clark & Bro. a check payable to the order of himself, signed by E. H. Hubbard, receiver, for the sum of $2,825.39, in order to obtain the money to comply with the order of the court directing him to pay said amount to Lutey Bros. The receiver exhibited to A. J. Johnston, the cashier of said banking house of W. A. Clark & Bro., a copy of the order of the court directing him, as receiver, to pay the said sum of money to Lutey Bros., but the said Johnston, the relator in this case, refused payment of the check presented by the receiver. Thereupon Hubbard, as receiver, filed a petition alleging the facts as heretofore set forth, and showing that he had to his

credit as receiver more than enough money to pay the check, and that the said Johnston knew that the said money was deposited in the bank of W. A. Clark & Bro. to the credit of E. H. Hubbard, as receiver.   The court then directed said Johnston to show cause why he should not pay the check of the receiver, or be punished for contempt for interfering with the receiver in the discharge of his duties.   Johnston, the cashier of the bank, for an answer to the order, admitted the truth of the material facts alleged in the petition, but averred that the court had no jurisdiction over him or the said money, and that the money deposited in the bank of Clark & Bro. had been attached by W. A. Clark & Bro., the banking firm where the said fund was deposited, and that in the said action the said Hubbard and he, the said Johnston, had been served with notices of garnishment.   Johnston further alleged upon information and belief that while Lutey Bros. had possession of the stock of merchandise which they had bought from the said Hubbard as receiver, they had sold about $1,500 worth of the goods, and that the sale by Hubbard, as receiver, to Lutey Bros. had not been revoked by the corporation, and that the said $1,500 ought to have been deducted from the total of $3,241.19, and that the said Hubbard and Lutey Bros. were in collusion to deprive W. A. Clark & Bro. of their just right to the money on deposit in the said banking house.   The district court ruled that the reply of Johnston did not exonerate him from paying the check of Hubbard, as receiver, and accordingly ordered that said Johnston pay to said Hubbard, as receiver, the sum of $2,825.39, upon the receiver presenting to the said banking house of W. A. Clark & Bro. a check properly drawn upon the fund on deposit, as heretofore referred to, within fifteen days from the date of the order of the court, or that he be imprisoned in the county jail until he comply with the order.   The respondent contends that upon the record the court is not warranted in issuing the writ prayed for.

*John B. Welcome* and *Corbett, Clayberg & Gunn*, for Relator.

*Campbell & Parr*, for Respondents.

HUNT, J.   We think the learned counsel for the respondents has assumed a false premise in his brief, and upon it has constructed his argument.   His error lies in the very statement of the question for consideration, which he puts as follows:   "Is the person with whom a receiver of a court deposits money or property subject to the order of the court?" No doubt that, if the case were one where the cashier of a depository of a receiver's funds had refused to obey the order of a court of competent jurisdiction to pay into the receiver's hands money belonging to him as receiver, and held by the depository as a credit to the receiver's account, the officer of such depository so refusing would be liable in a contempt proceeding, upon the familiar doctrine that an unauthorized interference with a receiver's possession constitutes a contempt of court. (High on Receivers, Sec. 164.) Nor will it be denied that the liability of one who interferes with the rights of a receiver or his business by any unauthorized refusal to turn over property or funds to which the receiver is entitled, and for the delivery over of which the receiver has given orders, would make the one so refusing guilty of a contempt of court. So far, therefore, as these general principles of equity jurisdiction which are relied upon by respondent are applicable, we do not dissent from them.   We likewise agree to the proposition that, where one refuses to pay money held by him as a credit to the receiver's account, upon an order by the receiver made pursuant to an order of court, the party so refusing to pay in a contempt proceeding cannot justify his refusal upon the ground that the appointment of the receiver was improperly made, or even erroneous, for the court will not consider those matters in a collateral proceeding.   The writ of *certiorari* being one of review limited to the determination of whether the inferior court has exceeded its jurisdiction, and regularly pursued its authority, the action of the district court after it assumed jurisdiction and took control through a receiver, however erroneous that action may have been, unless

it was void, could not be disobeyed, and the disobedience justified by answering that the court's order was erroneously or improvidently made. (Smith on Receiverships, p. 85.)

But here the error of the court in adjudging petitioner guilty upon the facts alleged was one that involved an excess of the court's jurisdiction. This is apparent, under the decision of this court in *State* v. *Clancy*, 20 Mont. 284, 50 Pac. 852, where it was decided that the original complaint filed in the district court of Silver Bow county in the case of J. D. Thomas et al. against Thornton-Thomas Mercantile Company was "virtually a blank paper," and that for various reasons, stated in the opinion, there was no authority of law to appoint a receiver of the corporation at all upon the showing made. The case, therefore, is not one where there has been a receiver appointed by a competent court with jurisdiction over the subject-matter and of the parties before it, and where the court's orders were regular, even though erroneous, but one where the court has done that which is a nullity, and where all the orders, including the one appointing a receiver, and all those subsequent thereto, are absolutely void, and entirely beyond the jurisdiction of the court that made them. (*People* v. *Weigley*, 155 Ill. 491, 40 N. E. 300.) Such being the state of the case, the order of the district court appointing the receiver can be assailed collaterally, and with impunity by anybody. (Van Fleet's Collateral Attack, Sec. 16.)

The real question for decision, then, is whether the district court in which the receiver was appointed, and in which the court ordered that the receiver pay Lutey Bros. the sum of money named in the order, had jurisdiction to grant the ultimate relief prayed for in the complaint in the original action. And as that question has been answered by this court in the negative, it follows that the court had no power in the proceedings in that action to authorize the receiver to pay over any moneys to his credit in the bank of Clark & Bro. to Lutey Bros. after the same were attached in the hands of the bank. If, after our decision, the Thornton-Thomas Mercan-

tile Company had gone into court, and made an application to have its property which had been taken away and sold by the receiver restored to it by him, and the court had made an order to that effect and the receiver had disobeyed the order, it may be that such disobedience would have constituted a contempt, as was held in *People* v. *Jones,* 33 Mich. 303; or perhaps the money collected by the receiver, who acted under an appointment that was void, could be recovered by the party entitled to it in an action in *assumpsit,* as in *Johnson* v. *Powers,* 21 Neb. 292, 32 N. W. 62. See, also, *O'Mahoney* v. *Belmont,* 62 N. Y. 133. But where a stranger to all parties to the original suit of Thomas et al. against the Thornton-Thomas Mercantile Company has disobeyed an order of court which the court had no authority in law to make, he cannot be guilty of contempt. (*State ex rel. Evans* v. *Winder* (Wash.) 44 Pac. 125; *Clark* v. *Burke,* 163 Ill. 334, 45 N. E. 235; *People* v. *Weigley,* 155 Ill. 491, 40 N. E. 300.) "A party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make." (*Leopold* v. *People,* 140 Ill. 553, 30 N. E. 348; *Brown* v. *Moore,* 61 Cal. 432; *People* v. *O'Neil,* 47 Cal. 109; *Whitney* v. *Hanover National Bank* (Miss.) 15 South. 33.)

We are of the opinion that the writ prayed for must issue, and it is so ordered.

PEMBERTON, C. J. and PIGOTT, J., concur.