LUTEY ET AL., APPELLANTS, *v.* CLARK ET AL., RESPONDENTS.

(No. 1,917.)

(Submitted June 14, 1904.   Decided June 28, 1904.)

*Corporations—Receivers — Appointment—Sales—Vacation— Reversal of Orders—Effect—Involuntary Trusts—Election —Application of Property.*

1.   Where the receiver of a corporation sold certain of its property, and thereafter the order appointing the receiver and authorizing a sale was reversed on appeal, the purchasers held the property and the proceeds of their sale thereof as involuntary trustees for the corporation, and the receiver held the purchase price as an involuntary trustee for the purchasers, under Civil Code, Sections 2958, 2959.
2.   Where orders appointing a receiver and directing a sale of property are reversed on appeal, the purchaser of the property, at a sale had pending the appeal, can recover purchase money paid although the purchased property in his possession has been subjected to the payment of the debts of the corporation for which the receiver was appointed.
3.   Where a corporation prosecuted an appeal from orders appointing a receiver and authorizing the sale of certain of its property on which such orders were reversed, such appeal constituted an election by the corporation to have the property restored to it or applied to its benefit, and the application of such property to judgments recovered against the corporation constituted an application of the property to the corporation's benefit.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by William Lutey and another against W. A. Clark and another.   From a judgment in favor of defendants, plaintiffs appeal.   Reversed.

*Mr. A. J. Campbell,* for Appellants.

In this case the defendants had no lien upon the money, for two reasons, first, for the reason that the Thornton-Thomas Mercantile Company had no interest in the fund; second, the defendants could not create a lien by causing a writ of attachment to be issued and notice of garnishment served upon themselves. (Wade on Attachment, Vol. 2, Sec. 429; *Knight* v. *Clyde,* 12 R. I. 119; *Rice* v. *Sharpleigh Hardware Co.,* 85 Fed. 559; *Belknap* v. *Gibbons,* 13 Met. 471; *Blaisdell* v. *Ladd,* 14 N. H. 129; *Hoag* v. *Hoag,* 55 N. H. 172.)

It was contended in the court below that E. H. Hubbard was an involuntary trustee for the Thornton-Thomas Mercantile Company. (Sections 2953, 2958, 2959, Civil Code of Montana.) In consequence thereof, E. H. Hubbard, having received the money under a mistake of law, became an involuntary trustee for Lutey Brothers for the money so received, or for such part thereof as he received from them for the use and benefit of the plaintiffs in this action. He is liekwise a trustee for the money received from other persons, and he or his assignee has a right to receive the same from the person with whom he deposited it, that he may comply with the terms of the involuntary trust thereby created. This relation is created between the parties by the force of the Codes and should be denominated as a constructive trust. (Pomeroy, Equity Jurisprudence, Vol. 2, p. 1047.)

*Mr. W. M. Bickford, Mr. Jesse B. Roote, Mr. J. L. Templeman, Mr. W. A. Clark, Jr.,* and *Mr. George F. Shelton,* for Respondents.

The receiver, Hubbard, appointed by Judge Clancy, whose appointment was subsequently avoided *ab initio* by this honorable court, became and was liable to the Thornton-Thomas Mercantile Company as for a conversion for selling the goods and merchandise of the said corporation in his pretended capacity as receiver, even though he acted in good faith and under a firm belief in the validity of his appointment. (Bigelow on Torts,

p. 238; High on Receivers, Sec. 277; *Gutsch* v. *McIlhargey,* (Mich.) 37 N. W. 303; *Kenney* v. *Ranney,* (Mich.) 55 N. W. 982; *Staples* v. *May,* 87 Cal. 178; *Curran* v. *Craig,* 22 Fed. 101; *State* v. *Clancy,* 20 Mont. 284; *Hammock* v. *Loan & Trust Co.,* 105 U. S. 77; *Thurber* v. *Miller,* (S. D.) 75 N. W. 900.)

The Lutey Brothers having purchased property belonging to the Thornton-Thomas Mercantile Company from the pretended receiver, Hubbard, were equally with him guilty of a conversion of the goods, and liable for such conversion to the Thornton-Thomas Mercantile Company. It is evident that if a wrongful sale is followed up by delivery, both the seller and buyer are equally guilty of conversion. This is a fundamental principle, and is fully sustained by the authorities both in this country and in England. (*McCombey* v. *Davis,* 6 East. 538; *Baldwin* v. *Cole,* 6 Mod. 212; *Hardman* v. *Booth,* 1 H. & C. 803; *Hollins* v. *Fowler,* L. R. 7, H. L. 757; *Carter* v. *Kingman,* 103 Mass. 517; *Omaha & Grant, etc. Co.* v. *Tabor,* (Colo.) 16 Am. St. Rep. 185; *Gilmore* v. *Newton,* (Mass.) 95 Am. Dec. 749; *Ford* v. *Wells,* (Ind.) 43 N. E. 155; *Lodson* v. *Mostowitz,* (S. C.) 23 S. E. 49; *Clark* v. *Wells,* 45 Vt. 4; *Clark* v. *Dideout,* 39 N. H. 238; *Stanley* v. *Gaylord,* (Mass.) 48 Am. Dec. 643; *Williams* v. *Merle,* (N. Y.) 11 Wend. 80; *Riford* v. *Montgomery,* 7 Vt. 418; *Courtis* v. *Cane,* (Vt.) 76 Am. Dec. 174; *Spooner* v. *Holmes,* 102 Mass. 507; *Velzain* v. *Lewis,* (Ore.) 16 Pac. 631, s. c., 3 Am. St. Rep. 184, and cases cited; *Hills* v. *Snell,* (Mass.) 6 Am. Rep. 216; *Riley* v. *Boston, etc. Co.,* (Mass.) 11 Cush. 11; *McDaniels* v. *Adams,* (Tenn.) 11 S. W. 939; *Ramsby* v. *Beezley,* 11 Ore. 49; *Heberling* v. *Jagger,* (Minn.) 28 Am. St. Rep. 331; *Case* v. *Hart,* (Ohio) 38 Am. Dec. 735.)

The Lutey Brothers, having exercised acts of dominion over the goods and merchandise bought from the pretended receiver, Hubbard, were estopped from claiming that they were not the owners of the residue of said merchandise, and from restoring the said merchandise to the Thornton-Thomas Mercantile Com-

pany. (*Bolling* v. *Kirby,* 24 Am. St. Rep. 808; *Higgins* v. *Whitney,* (N. Y.) 24 Wend. 379; *Wooley* v. *Carter,* 7 N. J. Law, 85; *Livermore* v. *Northrup,* 44 N. Y. 107; *Hart* v. *Skinner,* (Vt.) 42 Am. Dec. 500; *Whitker* v. *Houghton,* 86 Pa. St. 48; *Reynolds* v. *Shuler,* (N. Y.) 5 Cow. 323; *Walker* v. *Fuller,* 29 Ark. 448; *Hammer* v. *Wilsey,* (N. Y.) 17 Wend. 91; *Stickney* v. *Allen,* (Mass.) 10 Gray, 352; *Noman* v. *Rogers,* 29 Ark. 365.)

Hubbard, the pretended receiver, upon the avoidance of his authority by this supreme court, became an involuntary trustee for the benefit of the Thornton-Thomas Mercantile Company of: (a) All the goods, wares and merchandise in his hands formerly belonging to the Thornton-Thomas Mercantile Company, or (b) Of all the proceeds of the sale of the goods converted to the Lutey Brothers and deposited by him as receiver in the banking house of W. A. Clark & Brother. (Civil Code of Montana, Secs. 2952, 2959; *Pennell* v. *Deffell,* 4 De. G. M. & G. 372; *Frith* v. *Cortland,* 2 Hem. & M. 417-420; *In re West of England, etc.,* 11 Ch. D. 772; *Peak* v. *Elliott,* (Kan.) 46 Am. Rep. 90; *Nat'l Bank* v. *Ins. Co.,* 104 U. S. 54; *Fox* v. *Mackreth,* 1 Smith's Leading Cases in Equity, (4th Ed.) p. 115; *Lench* v. *Lench,* 10 Vesey, 511; *Lewis* v. *Maddocks,* 17 Vesey, 48-51; *Ernest* v. *Craysdill,* 2 De Gex, 174; *Springfield, etc. Co.* v. *Copeland,* (Mass.) 3 Am. St. Rep. 489; *Farmers, etc. Bank* v. *King,* (Pa.) 98 Am. Dec. 215; *Van Allen* v. *Bank,* 52 N. Y. 1; *Dows* v. *Kidder,* 84 N. Y. 121; *Wells, Fargo & Co.* v. *Robinson,* 13 Cal. 134; *Lathrop* v. *Bampton,* 31 Cal. 17; *Schlaefler* v. *Carson,* (N. Y.) 52 Barb. 510; *Olwen* v. *Pratt,* 3 How. 333; *May* v. *Le Claire,* 11 Wall. 236; *Hubbard* v. *Burrell,* 41 Wis. 365; *Murray* v. *Lylburn,* 2 Johns. Ch. 441; *Briet* v. *Yeaton,* 101 Ill. 271; *Houghwont* v. *Murphy,* 2 N. J. Eq. 531; *Newton* v. *Porter,* 69 N. Y. 133-140; *Bank of America* v. *Pollock,* 4 Edw. Ch. 215; *Cookson* v. *Richardson,* 69 Ill. 137; *In re Green's Estate,* 20 N. Y. Supp. 94; *Moses* v. *Murgatrowd,* 1 Johns. Ch. 119; *Cook* v. *Tullis,* 18 Wall. 341; *Lathrop* v. *Bampton,* 31 Cal. 17; *First Nat'l Bank* v. *Hummell,* (Colo.)

20 Am. St. Rep. 257; *McLoyd* v. *Evans,* 66 Wis. 401; *People* v. *City Bank of Rochester,* 96 N. Y. 32; *Gilman* v. *Hamilton,* 16 Ill. 225; *Attorney General* v. *College,* 85 Ill. 516; *Chesterfield County* v. *Dehon,* (Mass.) 16 Am. Dec. 367; *Bank* v. *Stillwater, etc. Co.,* (Minn.) 30 N. W. 440; *Coggswell* v. *Griffith,* (Neb.) 36 N. W. 538; *Englar* v. *Offcut,* (Md.) 14 Am. St. Rep. 332; Pomeroy's Equity Juris. Secs. 1048, 1051.)

At the time of the assignment by the pretended receiver, Hubbard, of all his right, title and interest in and to the moneys deposited by him with the banking house of W. A. Clark & Brother, to the Lutey Brothers, the said moneys were subject to the lien of attachment issued on the application of W. A. Clark & Brother in an action commenced by them against the Thornton-Thomas Mercantile Company, and they, the Lutey Brothers, acquired no greater interest or title thereto than Hubbard himself had. That by said attachment and garnishment of said money deposited by the pretended receiver, Hubbard, as receiver, in the banking house of W. A. Clark & Brother the defendants secured a lien thereon, and having subsequently secured a judgment against the Thornton-Thomas Mercantile Company, the said lien became merged in the lien of the judgment and consummated the title of the defendants to the said money—at least, as against the pretended receiver, Hubbard, and his assigns, the appellants herein. (*Davies* v. *Austin,* 1 Vesey, 245; *Priddy* v. *Rose,* 3 Meriv. 107; *Turlon* v. *Benson,* 2 Vern. 765; *Cole* v. *Jones,* 2 Vern. 691; *Murray* v. *Balou,* 1 Johns. Ch. 566; *Newton* v. *Bouler,* (N. J.) 25 Am. Rep. 157; *Bullard* v. *Kinney,* 10 Cal. 60; *Down* v. *Olmstead,* 41 Ill. 344; *Padfield* v. *Green,* 85 Ill. 529; *Solomon* v. *Buschnell,* (Ore.) 50 Am. Rep. 475.)

We submit that the respondents have an absolute right, at least as against the appellants, to the moneys involved in the present case. They have not been negligent in the matter of subjecting the fund according to law to the payment of the judgment obtained by them against the Thornton-Thomas Mercan-

tile Company. They have not slept on their rights; and, further than this, having corporal possession of the funds, they are entitled to the same as against the world until a better title in another person is shown. The general rule is—especially in those states where different courts exercise legal and equitable jurisdiction respectively—that where the trust is an active one, or where the trustee has some discretionary powers to exercise, trust funds in the hands of such trustee cannot be reached by garnishment. (*Lackett* v. *Roumbaugh*, 45 Fed. 23; *Hinkley* v. *Williams*, (Mass.) 1 Cush. 490; *Lackland* v. *Garische*, 56 Mo. 267; *Fauce* v. *Brown*, 32 N. J. Eq. 118; *Husted* v. *Stone*, 69 Vt. 149; *Marvel* v. *Babbet*, 143 Mass. 226; *Prentis* v. *Pleasanton*, (Pa.) 8 Atl. 842; *Steib* v. *Whitehead*, 111 Ill. 247.)

Yet, when the trust is a dry or terminated one, such as in the case at bar,—such a one, in fact, that the *cestui que trust* may maintain an action for money had and received against the trustee for money due and payable to him,—this claim, it is well settled, may be reached by garnishment. (Shinn on Attachment and Garnishment, Sec. 531; *Eastbrook* v. *Earl*, 97 Mass. 302; *Haskell* v. *Haskell*, 49 Mass. 545; *Davis* v. *Davis*, 30 Vt. 440; *McLaughlin* v. *Swan*, (N. Y.) 18 How. 217; *Wilter* v. *Little*, 66 Iowa, 227; *Elser* v. *Rommel*, (Mich.) 56 N. W. 1107; Wappels on Attach. and Garnish., 265.)

Any sum payable to the *cestui que trust* can be reached by garnishment proceedings when in the hands of a trustee. (*Girard, etc. Co.* v. *Chambers*, (Pa.) 86 Am. Dec. 513; *Baker* v. *Kaiser*, 75 Md. 332, s. c., 23 N. W. 735; *Chandler* v. *Booth*, 11 Cal. 342.)

Can a creditor garnishee himself and thereby create a lien upon moneys owing to a debtor? (*Rice* v. *Sharpleigh Hardware Co.*, 85 Fed. 559; *Belknap* v. *Gibbons*, 13 Met. 471; *Knight* v. *Clyde*, 12 R. I. 119; *Graighle* v. *Notnagle*, 1 Pet. C. C. 245, Fed. Cases No. 5.679; *Richardson* v. *Gurney*, 9 La. 285; *Grayson* v. *Veeche*, (La.) 13 Am. Dec. 384; *Norton* v. *Norton*, (Ohio) 3 N. E. 348; *Coble* v. *Nonemaker*, 78 Pa. St.

501; *Boyd* v. *Bayless,* (Tenn.) 4 Humphrey's, 386; *Albert* v. *Albert,* (Md.) 28 Atl. 388; *Lyman* v. *Wood,* 42 Vt. 113; *New England Screw Co.* v. *Bliven,* 3 Blatchf. 240, Fed. Case No. 10,156; Sergeant on Attachment, 72; Drake on Attachment, Sec. 543; Wade on Attachment, Sec. 341; *Coke* v. *Brainforth,* Cro. Eliz. 830; *Paramore* v. *Payne,* Cro. Eliz. 598; *Morris* v. *Ludlam,* 2 H. Bl. 362; English cases cited in *Graighle* v. *Notnagle, supra;* Sec. 900 of the Code of Civil Procedure of Montana; *Kipp* v. *Silverman,* 25 Mont. 305.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On October 7, 1897, J. D. Thomas and George P. Bretherton, minority stockholders in the Thornton-Thomas Mercantile Company, a corporation doing business at Butte, Montana, brought an action in the district court against that corporation for the purpose of having a receiver appointed to take charge of and wind up the business of the concern. The district court appointed one E. H. Hubbard as such receiver, who immediately took possession of the property, and upon the receiver's petition the district court on October 19th made an order for the receiver to sell at once at public auction or private sale the personal property belonging to the corporation. It appears that pursuant to such order the receiver sold to Lutey Bros., appellants here, a portion of such personal property for the sum of $3,-241.19, which sum was paid over to the receiver, and by him deposited in the bank of W. A. Clark & Bro., the respondents, in the name of E. H. Hubbard, receiver; that thereafter on October 21, 1897, the Thornton-Thomas Mercantile Company applied to this court for a writ of *certiorari* to review the action of the district court in appointing the receiver and in making the order of sale above mentioned; that the cause was heard in this court, and on November 15, 1897, this court rendered its judgment and decision reversing the order of the district court appointing the receiver, and vacating all orders of that court

made subsequently thereto, including the order of sale above mentioned (*State ex rel. Thornton-Thomas Mercantile Co.* v. *District Court, and Clancy, Judge,* 20 Mont. 284, 50 Pac. 852); that on the 15th day of November, 1897, these respondents commenced an action in the district court against the Thornton-Thomas Mercantile Company to recover from said company the sum of $5,653.96, then due and owing to respondents from such company, and caused a writ of attachment to be issued and placed in the hands of the sheriff of Silver Bow county, who thereupon served notice of garnishment upon these respondents through Alex. J. Johnston, the cashier of the banking house of W. A. Clark & Bro., and thereby attached said sum of $3,241.19, together with other moneys deposited in the name of E. H. Hubbard, receiver, all aggregating the sum of $3,949.78; that while Lutey Bros. were in possession of said personal property they sold and disposed of a portion thereof of the value of $415.85; that thereafter, on the 16th day of November, 1897, various other creditors of the Thornton-Thomas Mercantile Company brought actions in the district court against said company, and caused writs of attachment to issue therein, and caused said personal property remaining in the possession of Lutey Bros. to be attached, and the sheriff took possession of said property under and by virtue of said writs of attachment, and thereafter, upon judgments duly made and entered, sold such property so attached to satisfy the judgments thus obtained against the Thornton-Thomas Mercantile Company; that on March 1, 1898, E. H. Hubbard made demand upon W. A. Clark & Bro. for the moneys so deposited in said bank, but such demand was then and thereafter continuously refused; that on the 25th of May, 1898, the said Hubbard sold and assigned all interest that he had in said money so deposited to Lutey Bros., appellants herein; and thereafter, on May 26, 1898, Lutey Bros. commenced this action in the district court against W. A. Clark & Bro. to recover the said sum of $3,949.78, with interest and costs. The defendants answered, and thereafter the parties agreed upon the facts of the case, and an agreed statement was

filed February 13, 1901, containing the facts heretofore recited, and upon such statement of facts the district court found the issues for the defendants W. A. Clark & Bro., and entered judgment in their favor for their costs. From this judgment this appeal is prosecuted.

This court having determined in the *certiorari* proceedings that the action of the district court in appointing the receiver was without jurisdiction, and having reversed that order and annulled all orders made subsequently thereto, particularly the order under which the receiver pretended to sell certain personal property to Lutey Bros., these appellants, it becomes a question for determination then whose money was it that was attached in the hands of W. A. Clark & Bro., deposited there by Hubbard, the receiver, and whose goods were they that were attached in the hands of Lutey Bros. at the suits of other creditors of the Thornton-Thomas Mercantile Company?

It is said that, as Hubbard and Lutey Bros. exercised acts of dominion over these goods without the consent of the mercantile company, and in opposition to its interests, each is liable in conversion; that after the decision of this court Hubbard became an involuntary trustee for that company, and, as the company then could have pursued their goods or the particular funds derived from their sale, respondents W. A. Clark & Bro. could do likewise.

Much discussion is indulged in by counsel for respondents which is not pertinent here. Assuming that the pretended sale by Hubbard to Lutey Bros. was wrongful, and constituted a conversion of the goods, and that Lutey Bros., by their acts of ownership over the goods in selling a portion of them, were likewise guilty of a conversion, it must be conceded that the mercantile company, while it could maintain an action against Hubbard for conversion, or could pursue Lutey Bros. and elect either to sue them as for a conversion of the property or in claim and delivery for the return of the specific property or such portion of it as remained in their possession, it cannot maintain an

action in conversion against Hubbard and a like action against Lutey Bros., and thereby enforce two judgments for the same cause of action, or it cannot pursue Hubbard in conversion and sue Lutey Bros. for the specific property at the same time. The company was entitled to the property or to its value, but not to both. The effect of the decision of this court in vacating the order of sale was to declare such sale void *ab initio;* that in fact no sale had ever been made, and that the mercantile company was still the owner of the goods of which Lutey Bros. had come into possession; and whatever right the mercantile company had to make an election to take the property or sue for damages for its conversion, until it exercised such election, the ownership of the property was in it, and such property was subject to attachment at the instance of any of its creditors. The decision of this court was to the effect that no sale had been made; in other words, that the pretended sale was without effect, and conveyed no title to the property. Hubbard, having received the money belonging to Lutey Bros. on such void sale, became (on such sale being declared void) an involuntary trustee of Lutey Bros. for the amount of money received from them; and likewise Lutey Bros., having received such goods on such pretended sale, became an involuntary trustee for the mercantile company for the goods which they retained and for the money which they had received from a sale of the portion of the goods disposed of by them.

Sections 2958 and 2959 of the Civil Code provide: Section 2958: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Section 2959: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Section 4334 of the Civil Code is cited, and it is said that the presumption of the measure of damages arising from the wrongful conversion of personal property cannot be repelled in favor of one whose possession is wrongful

from the beginning by his subsequent application of the property to the benefit of the owner without the owner's consent. But this section has no application here, for the record discloses that the mercantile company did elect to have the sale set aside, to have its property restored to it or applied to its benefit, and when it was applied to the satisfaction of judgments recovered against the mercantile company it was applied to the company's benefit. The proceedings in this court were taken at their instance, and constituted such election.

We are of the opinion that this disposes of the case, and it is not necessary to decide the abstract question, can a plaintiff in an attachment suit secure a lien upon property in his own possession by having himself served as garnishee?

As it does not appear from this record what disposition was ever made by appellants of the $415.85 received by them from the sale of a portion of the goods belonging to the mercantile company, this court is unable to make any order respecting the same.

The judgment is reversed, and the cause remanded to the district court, with directions to enter judgment in favor of the plaintiffs (appellants here) for $3,241.19, together with interest and costs.

*Reversed and remanded.*

Mr. Justice MILBURN, not having heard the argument, takes no part in this decision.

## ON MOTION FOR REHEARING.

(Decided October 3, 1904.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Respondents have petitioned for a rehearing and a modification of the order heretofore made by this court in determining

this appeal.   Respondents pray that this cause be remanded for
a new trial.

In the opinion heretofore rendered (*Lutey* v. *Clark,* 31 Mont.
45, 77 Pac. 305) this language is used: "As it does not appear
"from this record what disposition was ever made by appellants
"of the $415.85 received by them from the sale of a portion of
"the goods belonging to the mercantile company, this court is
"unable to make any order respecting the same."   Respondents
now contend as this court was unable to make any suggestion as
to the proper disposition of this $415.85, a new trial should be
ordered, that a determination respecting that sum of money may
be had.   The language quoted above from the former opinion
of this court was inaptly used.   That sum of money was re-
ceived by Lutey Bros. from a sale of a portion of the stock of
goods which they had received under the pretended sale
of the receiver.   That sale being void, the remaining portion
of those goods and this sum of money were held by Lutey Bros.
as an involuntary trustee for the Thornton-Thomas Mercantile
Company.   This company is not a party to this action and their
interests could not be affected by any new trial which may be
ordered; in fact, there is nothing to try respecting this sum of
money as between the parties to this action so far as this record
shows.

But it is contended that W. A. Clark & Bro. are subrogated
to the rights of the Thornton-Thomas Mercantile Company, and
therefore this sum should be deducted from the amount which
Lutey Bros. are entitled to recover from them.   But this sub-
rogation arises, if at all, from the mere fact that W. A. Clark
& Bro. secured a judgment against the Thornton-Thomas Mer-
cantile Company, which judgment has never been satisfied.
Respondents' contention then is this: If A. sue B. and attaches
certain property, and B. has other property which is not at-
tached or levied upon in any manner, and A. recovers a judg-
ment which is not satisfied, he thereupon becomes subrogated
to the right of B. in the property which was not seized.   The

mere statement of the proposition is sufficient demonstration of its absurdity. It is nowhere claimed that Clark & Bro. ever levied upon or seized this sum of $415.85 in the hands of Lutey Bros. or in any manner brought themselves into privity with it. As they have no interest in it now, so far as this record discloses, they cannot be heard to ask for any adjudication in this action respecting it. In our former opinion we should either have made no reference whatever to this sum, or should have contented ourselves with merely remarking that, as this sum belongs to the Thornton-Thomas Mercantile Company, a concern not a party to this present action, we are without authority to make any direction as to the proper disposition of it.

The motion for rehearing is denied.